LAURA BOSWELL (Bar No. 12449)
MARY ANNE DAVIES (Bar No. 14965)
KATIE BUSHMAN (Bar No. 15561)
**DISABILITY LAW CENTER**
205 North 400 West
Salt Lake City, Utah 84103
(t) 801.363.1347
(f) 801.363.1437
Email: lhenrie@disabilitylawcenter.org
        mdavies@disabilitylawcenter.org
        kbushman@disabilitylawcenter.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **EDWIN STAFFORD,**<br><br>     Plaintiff,<br><br>vs.<br><br>**MCKAY-DEE HOSPITAL,**<br><br>    Defendant. | **COMPLAINT**<br>**(JURY DEMANDED)**<br><br><br>Civil No. _____<br><br>Judge: _____ |

Plaintiff Edwin Stafford ("Mr. Stafford" or "Plaintiff"), by and through his attorneys,

hereby complains against Defendant McKay-Dee Hospital ("McKay-Dee" or "Defendant") as

follows:

## I.   NATURE OF THE CLAIMS

This suit is brought by Plaintiff Edwin Stafford under the Americans with Disabilities Amendments Act, codified at 42 U.S.C. § 12101 *et seq.* ("ADA-AA"), for disability discrimination and retaliation. Plaintiff seeks injunctive and equitable relief, monetary relief as compensation for the Defendant's violation of his rights under the ADA-AA, and attorney fees and costs pursuant to 42 U.S.C. § 12205.

## II.   PARTIES

1.     McKay-Dee is a registered DBA of Intermountain Health Care, Inc., which is a Utah corporation and registered to conduct business in the State of Utah. McKay-Dee is a hospital that provides medical services to patients and is physically located in Ogden, Utah.

2.     Mr. Stafford is an individual residing in Davis County, Utah. At all times relevant to this Complaint, Mr. Stafford resided in Davis County.

## III.   JURISDICTION AND VENUE

3.     Plaintiff, having exhausted all available administrative remedies, now seeks relief in Federal Court.

4.     This Court has jurisdiction to hear and decide Plaintiff's claims pursuant to 28 U.S.C. § 1331 and the ADA, 42 U.S.C. §§ 12101 through 12213. This court has personal jurisdiction over the Defendant because the Defendant conducts business in the state of Utah.

5.     Venue is proper with this Court pursuant to 28 U.S.C. § 1391(b), because all the employment practices alleged to be unlawful were committed within the jurisdiction of this Court.

## IV.    GENERAL ALLEGATIONS

6.    McKay-Dee employs more than 15 employees, and is subject to the ADA-AA.

7.    Mr. Stafford is a 35-year-old male, living with Asperger's Disorder and Dysthymic Disorder.

8.    Mr. Stafford's disabilities substantially limit one or more of his major life activities, including but not limited to, caring for himself, communicating, working, and interacting with others.

9.    As a result of his disabilities, the United States Social Security Administration ("Social Security") approved Mr. Stafford for receipt of Social Security Disability Insurance ("SSDI").

10.    In addition to receiving SSDI, Mr. Stafford is qualified to receive services from Vocational Rehabilitation, an agency that assists people with disabilities to find and maintain employment.

11.    Vocational Rehabilitation can pay for services and supports to assist individuals with disabilities find and maintain gainful employment.

12.    Social Security allows people receiving disability benefits under SSDI to work and continue to receive monthly payments. However, SSDI recipients are limited in the amount they can earn and still maintain benefits. As a result, beneficiaries are often limited in the number of hours they can work.

13.     Social Security also provides for a nine-month trial work period to encourage recipients

to enter the workforce without fear of losing benefits. During a trial work period,

beneficiaries are able to work while receiving their full Social Security benefits

regardless of how much they earn as long as they report their work activity and continue

to have a disabling impairment.  During these nine months, there are no limits on

beneficiaries' earnings.

14.     On or about late October or early November of 2016, Mr. Stafford applied for two

custodial positions at McKay-Dee.

15.     While completing the online employment application, Mr. Stafford self-identified as an

individual with a disability.

16.     On or around November 9, 2016, Mr. Stafford interviewed with a McKay-Dee custodial

supervisor for two custodial positions – one was a 16-hour per week position, and the

other was an on-call position that could be assigned anywhere from 0 to 40 hours per

week.

17.     During the interview, Mr. Stafford informed the supervisor that, due to his receipt of

SSDI benefits, he would be limited to working an average of 16 hours per week.

18.     The hiring supervisor informed Mr. Stafford that his restricted hours would not be a

problem for McKay-Dee for the on-call position.

19.     Mr. Stafford also indicated that if the number of hours worked in a month exceeded an

average of 16 per week, he could still choose to utilize one of his 9 trial work period

months which would provide him with additional flexibility to take the on call position.

20. Specifically, Mr. Stafford indicated his willingness to utilize one of these trial work months in order to complete the necessary training which would exceed an average of 16 hours per week.

21. After the interview took place, a recruiter from McKay-Dee named Anna Kelley ("Ms. Kelley") called Mr. Stafford and offered him the on-call position.

22. Mr. Stafford accepted the position and completed the final steps of the hiring process, which included drug screening, a blood draw, and receiving vaccinations.

23. Mr. Stafford also completed online hiring paperwork, which was then transmitted to McKay-Dee.

24. In an effort to support Mr. Stafford's new position, Vocational Rehabilitation was going to provide Mr. Stafford with a job coach during the first 90 days of his employment, at no expense to McKay-Dee, to help Mr. Stafford with communication and social situations.

25. On or around November 22, 2016, Mr. Stafford met with his Vocational Rehabilitation Counselor, Cheri Lachenmeier ("Ms. Lachenmeier"), to inform her about his new job.

26. During that meeting, Mr. Stafford informed Ms. Lachenmeier of his plan to quit his current job at Hill Air Force Base, effective December 10, 2016, in anticipation of a required orientation at McKay-Dee on or around December 12, 2016.

27. On or around December 8, 2016, a McKay-Dee employee called Mr. Stafford to remind him about the upcoming new employee orientation to be held on December 12, 2016 at 8:00am.

28.   During this phone call, Mr. Stafford informed McKay-Dee that his job coach would be attending orientation with him. Mr. Stafford was then transferred to Ms. Kelley, who informed Mr. Stafford that his orientation was "on hold" to determine if he would be a good fit for the custodial position.

29.   Ms. Kelley also informed Mr. Stafford that she needed to speak with a health nurse within the human resources department in Murray, Utah, to discuss concerns about confidentiality.

30.   Ms. Kelley did not ask Mr. Stafford how a job coach would assist him in his position, how long a job coach would provide support, or engage in a discussion concerning other reasonable accommodations.

31.   Ms. Kelley did not ask Mr. Stafford any questions relating to the number of hours he could work during this interaction.

32.   On or around December 9, 2016, Mr. Stafford spoke with the health nurse and explained that he would like to utilize the services of a job coach to assist him with his disabilities. He also described how a job coach would accommodate his disabilities, and that Vocational Rehabilitation would pay for the job coach's services.

33.   The health nurse did not ask for a medical examination or records.

34.   Mr. Stafford also informed the health nurse that he would be limited to an average of 16 hours of work per week due to his status as a SSDI recipient.

35.   On or around December 12, 2016, Ms. Kelley called Mr. Stafford and withdrew his job offer.

36.   Ms. Kelley's justifications for rescinding the job offer were Mr. Stafford's limited hours and Ms. Kelley's general concerns about confidentiality when utilizing the job coach.

37.   Ms. Kelley made no attempt to assist Mr. Stafford to find another position at McKay-Dee or associated facilities.

38.   On or around December 16, 2017, Mr. Stafford filed paperwork with the United States Equal Employment Opportunity Commission ("EEOC") to initiate his Charge of Discrimination.

39.   On or around May 23, 2017, Mr. Stafford filed a timely Charge of Discrimination with the EEOC, alleging retaliation and discrimination on the basis of disability.

40.   On or around September 21, 2018, Mr. Stafford was issued a Dismissal and Notice of Rights letter ("Right to Sue" letter) from the EEOC, indicating that no further action would be taken by the EEOC.

41.   Mr. Stafford received the Notice on or about September 25, 2018.

## FIRST CLAIM FOR RELIEF

### Failure to Provide Reasonable Accommodations in Violation of the ADA-AA

Mr. Stafford incorporates herein by reference all of the allegations made in previous paragraphs, and further alleges as follows:

42.   Plaintiff is an individual with disabilities as defined by the ADA-AA.

43.   Plaintiff was qualified to perform the essential functions of the custodial positions he applied for at McKay-Dee.

44.   Plaintiff requested reasonable accommodations to restrict the hours he could work each week, due to having disabilities and receiving SSDI.

45.   Mr. Stafford's accommodation request to work approximately 16 hours per week was meant to ensure that he, like McKay-Dee's employees without disabilities, would be able to fulfill is work duties without negatively impacting his health or financial stability.

46.   Even though Plaintiff had informed McKay-Dee that he needed to work an average of 16 hours per week in his interview and was then offered a position, McKay-Dee cited this same hour restriction as a reason for withdrawing its job offer.

47.   This failure to accommodate includes, but is not limited to, McKay-Dee's failure to provide Mr. Stafford with reasonable accommodations to work an average of 16 hours per week in his on-call position.

## <u>SECOND CLAIM FOR RELIEF</u>

**Failure to Provide Reasonable Accommodations in Violation of the ADA-AA**

Mr. Stafford incorporates herein by reference all of the allegations made in previous paragraphs, and further alleges as follows:

48.   Due to Plaintiff's disabilities, he utilizes the services of Vocational Rehabilitation, an agency that provides him with the assistance of a job coach at no cost to Plaintiff's employer.

49.   After receiving the job offer for an on-call custodian, Plaintiff requested a reasonable accommodation to allow his job coach to accompany him to orientation and on the job.

50.   Plaintiff's accommodation request to utilize a job coach at work was meant to ensure that he would have supportive services at work that would help him communicate with his colleagues and supervisors, work, and interact with others.

51.   McKay-Dee denied the request for accommodation, claiming that it had concerns about confidentiality.

52.   In doing so, McKay-Dee engaged in unlawful discrimination by failing to provide reasonable accommodations to the Plaintiff.

## THIRD CLAIM FOR RELIEF

### Disability Discrimination in Violation of the ADA-AA

Mr. Stafford incorporates herein by reference all of the allegations made in previous paragraphs, and further alleges as follows:

53.   McKay-Dee treated Mr. Stafford differently, took adverse action against him, and ultimately terminated his employment and/or rescinded an offer of employment because he is an individual with a disability.

54.   McKay-Dee discriminated against Mr. Stafford on the basis of disability when it forced him to stop participation in required training and orientation, refused to accommodate his disability and refused to allow him to formally begin work as an on-call custodian despite its previous job offer.

## FOURTHCLAIM FOR RELIEF

### Retaliation for Engaging in Protected Activity in Violation of the ADA-AA

Mr. Stafford incorporates herein by reference all of the allegations made in previous paragraphs, and further alleges as follows:

55.    Plaintiff engaged in a statutorily protected activity when he requested reasonable accommodations from McKay-Dee.

56.    After Plaintiff made requests for reasonable accommodation, McKay-Dee withdrew its job offer to the Plaintiff.

57.    There is a causal relationship that exists between Plaintiff's protected activity and the adverse action he suffered.

58.    McKay-Dee therefore violated the ADA-AA's anti-retaliation provision by withdrawing its job offer to Plaintiff almost immediately after he requested reasonable accommodations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EDWIN STAFFORD requests that the Court:

(a) Enter a permanent injunction enjoining Defendant from engaging in employment practices that discriminate on the basis of disability or retaliate against individuals for engaging in protected activity;

(b) Enter an order requiring Defendant to make Plaintiff whole by placing Plaintiff in the position he would have occupied in the absence of discrimination, including back-pay, front-pay, interest, and other benefits that would have accrued;

(c) Enter an order requiring Defendant to pay compensatory and punitive damages as a jury may assess;

(d) Award Plaintiff his reasonable attorney fees and costs, pursuant to 42 U.S.C. § 12205; and

(e) Award such other and further relief as justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial.

RESPECTFULLY SUBMITTED this **18TH** day of **December, 2018.**

/s/ Laura K. Boswell
LAURA K. BOSWELL
MARY ANNE DAVIES
KATIE BUSHMAN
**DISABILITY LAW CENTER**
*Attorneys for Plaintiff*